

U.S. Department of Justice

United States Attorney
Eastern District of New York

JAM

271 Cadman Plaza East
Brooklyn, New York 11201

December 4, 2023

By ECF

The Honorable Rachel P. Kovner
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Vladimir JOVANCIC.
                Docket No. 23-CR-430 (RPK)

Dear Judge Kovner:

      The government writes regarding defendant Vladimir JOVANCIC, who has been charged in the above-referenced indictment (the "Indictment").  JOVANCIC has been taken into custody in Croatia and will undergo extradition proceedings to the United States.  As described in the Indictment and herein, the defendant presents an irremediable flight risk and has significant ties to foreign jurisdictions, including non-extradition countries.  The government therefore moves for a permanent order of detention pending trial.

I.    Relevant Background[1]

      The Indictment charges Vladimir JOVANCIC, a national of Bosnia and Herzegovina, with Obstruction of Justice and Assisting with Escape from Custody.  JOVANCIC is one of several individuals who helped Artem Uss flee to Russia following an Italian court ruling that Uss would be extradited to Brooklyn to face charges in United States v. Orekhov et al., 22-CR-434 (EK), which charged Uss with heading a global scheme to smuggle millions of dollars in sensitive military and dual-use technologies and oil from Venezuela to sanctioned Russian oligarchs and companies.

---

[1]     Detailed herein is a proffer of the relevant facts and a discussion of the applicable law pertaining to the pretrial detention of the defendant.  See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (government entitled to proceed by proffer in detention hearings).

A. <u>Uss and the Underlying Criminal Indictment</u>

Uss is the son of Alexander Uss, the governor of Russia's Krasnoyarsk Krai region and a close ally of President Vladimir Putin. Uss has ownership interests in several Russian companies in Krasnoyarsk Krai and elsewhere, as well as a senior position with a subsidiary of ROSNEFT, a sanctioned Russian state-controlled oil conglomerate. Uss also had several significant holdings in Italy, including a luxury hotel in Sardinia, a vineyard and other real estate.

As described in the indictment 22-CR-434 and other court filings, Uss and his business partner, Yury Orekhov, orchestrated a transnational fraud, smuggling and money laundering operation under the umbrella of Nord-Deutsche Industrieanlagenbau GmbH ("NDA GmbH"), a privately-held industrial equipment and commodity trading company located in Hamburg, Germany. Uss and Orekhov each own fifty percent of NDA GmbH. Using NDA GmbH as a front company, Uss and Orekhov sourced and purchased sensitive military and dual-use technologies from U.S. manufacturers, including advanced semiconductors and microprocessors used in fighter aircraft, missile systems, smart munitions, radar, satellites, and other space-based military applications. These items were shipped to Russian end users, including sanctioned companies that serviced Russia's defense sector. Some of the types of electronic components obtained through the criminal scheme have been found in Russian weapons platforms seized on the battlefield in Ukraine. Uss and Orekhov also used NDA GmbH as a front to smuggle hundreds of millions of barrels of oil from Venezuela to Russian and Chinese purchasers, including a Russian aluminum company controlled by a sanctioned oligarch and the world's largest oil refining, gas and petrochemical conglomerate based in Beijing, People's Republic of China.

B. <u>Uss' Arrest in Italy and Escape</u>

Uss was apprehended in Milan, Italy after attempting to board a flight to Russia on October 17, 2022, pursuant to a provisional arrest request from the United States. Following his arrest, and over the objection of both Italian and U.S. prosecutors, Uss was released on bail to home detention at his Milan residence with electronic monitoring. On March 21, 2023, the Italian court approved Uss' extradition to the U.S. The next day, on March 22, 2023, Uss escaped from home detention and fled Italy, ultimately arriving in Russia, with the assistance of several individuals, including Vladimir JOVANCIC.

Uss' whereabouts were unknown until on or about April 4, 2023, when he made social media postings and statements to Russian news outlets announcing that he had returned to Russia. Uss claimed to have help from "strong and reliable people who were next to me during those dramatic days." Uss' father publicly thanked President Putin for his support.

C. <u>JOVANCIC's role in Uss' Escape</u>

The investigation into Uss' escape has revealed that, in or about January 2023, JOVANCIC and other individuals affiliated with a Serbian organized crime group were recruited by Uss to help him flee to Russia in the event extradition was granted. JOVANCIC met Uss' wife at a hotel in Milan, Italy, where they planned for JOVANCIC to deliver groceries to Uss' residence in Milan as a pretext so that JOVANCIC's presence would not raise suspicion if an escape was

necessary. Uss' wife also provided JOVANCIC with a cell phone and a 10,000 euro deposit for his services. JOVANCIC was later provided with a keycard to directly access Uss' residence.

On the day of Uss' escape, following the Italian court's decision to extradite Uss to the U.S., JOVANCIC and several other coconspirators went to Uss' residence. Once there, JOVANCIC escorted Uss into a car and provided Uss with bolt cutters, which Uss used to remove his electronic ankle monitor and throw it out the window. JOVANCIC and his coconspirators then drove Uss across the border into Slovenia. Over the next several days, JOVANCIC and his coconspirators shuttled Uss through Slovenia, Croatia and Bosnia and Herzegovina before crossing into Serbia, where Uss paid JOVANCIC an additional 40,000 euro before boarding a plane to Russia.

Surveillance video captured JOVANCIC arriving at Uss' residence and leaving with Uss on the day of the escape. A still image of JOVANCIC and Uss leaving the premises is attached below:



3

II.       <u>Legal Standard</u>

Under the Bail Reform Act, Title 18, United States Code, Section 3141, <u>et</u> <u>seq</u>., federal courts are empowered to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight. <u>See</u> 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community"). A finding of risk of flight must be supported by a preponderance of the evidence. <u>See</u> <u>United States v. Jackson</u>, 823 F.2d 4, 5 (2d Cir. 1987).

In addition, the Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. <u>See</u> 18 U.S.C. § 3142(g). As discussed below, these factors weigh against pretrial release and necessitate a sizable bail package.

III.     <u>A Permanent Order of Detention is Required to Ensure the Defendant's Appearance</u>

As set forth below, the factors to be considered in the detention analysis show that the defendant presents a significant risk of flight.

First, the charged offenses are serious and, by definition, show a brazen disregard for court orders and directives. Second, while the investigation is ongoing, the evidence amassed against JOVANCIC is substantial, including, <u>inter</u> <u>alia</u>, surveillance video, cell phone toll and location data, business records, license plate reader information, border crossing information, and information from witnesses. Indeed, JOVANCIC is clearly visible on surveillance video on the day of escape in a variety of locations, including outside of Uss' residence, leaving with Uss and meeting with coconspirators at various locations during the flight from Italy. The defendant also faces a significant term of incarceration should he be convicted, which provides powerful incentive for him to flee. <u>See, e.g.</u>, <u>United States v. Bruno</u>, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2015) ("When the sentence . . . upon conviction is likely to be long . . . a defendant has stronger motives to flee."). Third, JOVANCIC has no ties to the United States, while maintaining a network of criminal associates in the Balkans, Russia and elsewhere. If released, JOVANCIC would undoubtedly flee the jurisdiction and seek refuge in Russia or another non-extradition country.

4

IV.     Conclusion

For all of these reasons, the government respectfully submits that a permanent order of detention pending trial is necessary to ensure the defendant's return to court.

Respectfully submitted,

BREON PEACE  
United States Attorney

By:     /s/ Artie McConnell  
        Artie McConnell  
        Assistant U.S. Attorney  
        (718) 254-7000

cc:     Clerk of Court (by ECF)  
      Defense Counsel (by email)